UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLISON PFIFER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-1296 |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

The plaintiff, Allison Pfifer ("Pfifer" or "the plaintiff"), commenced the instant action against the defendant, Sedgwick Claims Management Services, Inc. ("Sedgwick"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (a)(1)(B),[1] alleging that Sedgwick, the Claims Administrator, wrongfully denied her claims for short-term disability ("STD") benefits pursuant to the 3M Short Term Disability Plan and long-term disability ("LTD") benefits pursuant to the 3M Long Term Disability Plan. Both plans are sponsored by 3M Company ("3M") and governed by ERISA. The plaintiff seeks compensation for denied benefits, interest and attorneys' fees and costs.

Pending before the Court are Sedgwick's motion for summary judgment and memorandum of law in support thereof (Dkt. No. 21), the plaintiff's response in opposition to Sedgwick's motion for summary judgment (Dkt. No. 24), Sedgwick's reply (Dkt. No. 25), the plaintiff's cross-motion for summary judgment (Dkt. No. 22) and Sedgwick's response in

---

[1] ERISA § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

opposition to the plaintiff's cross-motion for summary judgment (Dkt. No. 23). After having carefully considered the motions, responses, reply, the record and the applicable law, the Court determines that Sedgwick's motion for summary judgment should be **GRANTED**; and the plaintiff's cross-motion for summary judgment should be **DENIED**.

## II. FACTUAL BACKGROUND

The plaintiff, Pfifer, is a 64-year old female who worked as a "Lead Proposal Writer[2]" for 3M. During the relevant time, the plaintiff participated in a 3M-sponsored Short Term Disability Plan ("STD Plan") and Long Term Disability Plan ("LTD Plan") for eligible employees, effective January 1, 2016. Pursuant to the specific terms of the STD Plan and the LTD Plan, 3M's Director, Total Rewards Program Management, is designated as the Plan Administrator with the authority to delegate "its full and final discretionary power and authority with respect to benefit determinations to the Claims Administrator." (Dkt. No. 21, App. 3 at 3M00001479; App. 4 at 3M00001446.). Sedgwick is identified as the Claims Administrator with the discretionary authority to interpret the Plans' terms and decide questions of eligibility for coverage. (*Id.* at 3M00001482, 3M00001449).

An employee participant's eligibility for benefits under the STD Plan is determined as follows:

### Eligibility for Benefits

You are eligible to receive [STD] benefits under the Plan only if the Claims Administrator determines that:

- You are eligible and covered under the Plan;

---

[2] The plaintiff's position as a "Lead Proposal Writer" is classified as a sedentary, skilled position pursuant to the Dictionary of Occupational Titles.

- You meet the Plan's definition of Disabled (including providing Objective Medical Evidence of your disability, when requested by the Claims Administrator);
- Your disability is not one excluded from coverage under the Plan; and
- You satisfy all other eligibility requirements under the Plan.

To be eligible for STD benefits, you must provide sufficient Objective Medical Evidence of your disability. The Claims Administrator determines whether you have provided sufficient Objective Medical Evidence of your disability and may require more than one examination. You may be required to provide the Claims Administrator with continuing proof of your disability and prove that you are under the regular care of a physician. You must provide this proof at your own expense and within the timeframe required by the Claims Administrator. Failure to comply with the Claims Administrator's requests may impact your eligibility for and payment of benefits.

(*Id.* at 3M00001461.). The term "disabled" is defined under the STD Plan as follows:

## Disabled Defined

You are considered Disabled for purposes of the Plan only if the Claims Administrator determines that due to an illness, injury, pregnancy or other medical condition you are unable to perform the material duties of:

- Your regular and customary occupation at 3M; or
- Any other appropriate job offered by 3M.

In addition, you must be under the regular and continuous care of a licensed Health Care Provider, unless such treatment is not medically necessary given the nature of your disability.

. . .

The Claims Administrator determines whether or not you are Disabled on the basis of Objective Medical Evidence and any other relevant evidence.

**Please Note**: Social Security's decision is not considered when determining your eligibility for STD benefits. Therefore, if the Social Security Administration approves you for disability benefits, it doesn't mean you are eligible for 3M STD benefits.

(*Id.*).

An employee participant's eligibility for benefits under the LTD Plan is determined as follows:

## Eligibility for Benefits

You are eligible to receive [LTD] benefits under the Plan only if the Claims Administrator determines that:

- You are eligible and covered under the Plan;
- You meet the Plan's definition of Disabled (including providing Objective Medical Evidence of your disability, when requested by the Claims Administrator);
- Your disability is not one excluded from coverage under the Plan;
- You have exhausted your 3M STD benefits; and
- You satisfy all other eligibility requirements under the Plan.

To be eligible for LTD benefits, you must provide sufficient Objective Medical Evidence of your disability. The Claims Administrator determines whether you have provided sufficient Objective Medical Evidence of your disability and may require more than one examination. You may be required to provide the Claims Administrator with continuing proof of your disability and prove that you are under the regular care of a physician. You must provide this proof at your own expense and within the timeframe required by the Claims Administrator. Failure to comply with the Claims Administrator's requests may impact your eligibility for and payment of benefits.

(*Id.* at 3M00001428.). The term "disabled" is defined under the LTD Plan as follows:

## Disabled Defined

You are considered Disabled for purposes of the [LTD] Plan only if the Claims Administrator determines the following:

- **During the First 18 Months of LTD Benefit Payments:** Due to an illness, injury, pregnancy or other medical condition you are unable to perform the material duties of:

  - Your regular and customary occupation at 3M; or
  - Any other appropriate job offered by 3M.

  In addition, you must be under the regular and continuous care of a licensed Health Care Provider, unless such treatment is not medically necessary given the nature of your disability.

- **After the First 18 Months of LTD Benefit Payments:**
  - You are totally Disabled;
  - You are unable to perform the material duties of any occupation or employment for which you are, or may become, reasonably qualified by training, education or experience; and
  - You are unable to earn 70% or more of your Planned Total Cash Compensation (as defined under the "Planned Total Cash Compensation Defined" topic under this section) while working in any occupation or employment.

  In addition, you must be under the regular and continuous care of a licensed Health Care Provider, unless such treatment is not medically necessary given the nature of your disability.

  **Please Note**:   Social Security's decision is not considered when determining your eligibility for LTD benefits.   Therefore, if the Social Security Administration approves you for disability benefits, it doesn't mean you are eligible for 3M LTD benefits.

(*Id.*).

On May 11, 2016, the plaintiff ceased actively working for 3M due to severe pain in her right knee, including "swelling, stiffness, a decreased range of motion, changed gait and multiple falls." (Dkt. No. 1 at ¶ 24.).   The plaintiff alleges that she became "disabled" on May 11, 2016 and, as such, filed a claim for STD benefits through 3M's STD Plan administered by Sedgwick.   Pursuant to a letter dated May 12, 2016, Sedgwick sent the plaintiff necessary forms to be executed and returned to it by May 27, 2016, as support for her claim of disability.   The letter further advised the plaintiff as follows:   "**<u>Failure to meet the eligibility requirements for Short Term Disability Benefits or failure to timely submit the required forms will result in delay or denial of benefits</u>**." (Dkt. No. 21, App. 1 at 3M0000234).

On May 27, 2016, personnel from one of the plaintiff's treating physicians' offices contacted Sedgwick and left a message indicating that it would not be able to complete the

necessary forms on time. By letter dated May 31, 2016, Sedgwick denied the plaintiff's claim for STD benefits, informing her that "due to the failure or refusal to submit objective medical evidence, there is insufficient information to support that you are unable to perform the material duties of your regular and customary occupation at 3M, or any other appropriate job offered by 3M, due to an illness, injury, pregnancy, or other medical condition." (*Id.* at 3M0000140 - 42). Sedgwick's letter further informed the plaintiff of her right to seek review of its decision, submit additional evidence or obtain a reasonable accommodation. (*Id.*).

On June 3, 2016, the plaintiff filed a request for an appeal of Sedgwick's decision to deny her claim for STD benefits. As support for her appeal, she included office notes from Dr. Xinmin Tang, her treating physician, dated May 24, May 31, June 2 and June 3, 2016, along with a radiology report from Dr. Jonathan Squires dated May 28, 2016. (*Id.* at 3M0000119 - 27). An Attending Provider Statement executed by Dr. Tang was also encompassed amongst the medical documentation submitted by the plaintiff in support of her appeal. (*Id.*). In the Attending Provider Statement, Dr. Tang opined that on May 24, 2016--two weeks after the plaintiff ceased working—she reported severe right knee pain and could not "walk, stand, squat, sit [without] elevations" or do "anything that involves [her right] knee." (*Id.* at 3M0000119 - 20).

Sedgwick referred the plaintiff's medical records to Dr. John Evans, a board-certified orthopedic surgeon, for an Independent Physician Assessment ("IPA"). (*Id.* at 3M0000177 - 80). Dr. Evans, after reviewing the medical records provided by the plaintiff and contacting two of her treating physicians, Dr. Tang and Dr. Sang Choi, opined that the limited medical records provided by the plaintiff did not support her inability to perform her regular and customary occupation. (*Id.* at 3M0000116). Dr. Evans memorialized his findings in a report

dated June 16, 2016, which noted that the plaintiff did not have any restrictions that would prevent her from performing her regular and customary occupation at 3M. (*Id.*). He further noted that her sedentary position was not a physically demanding job. (*Id.*).

On June 22, 2016, Sedgwick notified the plaintiff that its denial of her claim for STD benefits would be upheld. It further advised the plaintiff of the contractual limitations period governing her right to initiate a civil action with respect to her claim for STD benefits under the STD Plan. On September 7, 2016, the plaintiff's employment with 3M was terminated.

On March 16, 2017, the plaintiff, by way of a letter from her attorney, sought to obtain LTD benefits, claiming a disability due to her right knee. On April 6, 2017, Sedgwick denied the plaintiff's claim for LTD benefits, asserting that the plaintiff was ineligible for such benefits due to her failure to exhaust STD benefits as required by the LTD Plan. On October 3, 2017, the plaintiff sought to appeal Sedgwick's denial of her LTD claim. On October 10, 2017, Sedgwick issued a letter to the plaintiff advising her that its decision to deny her claim for LTD benefits would be upheld and further reiterating that the plaintiff was not entitled to LTD benefits due to her failure to exhaust STD benefits. The letter further informed the plaintiff of the contractual limitations period governing her right to commence any lawsuit for LTD benefits under the LTD Plan.

On April 25, 2018, the plaintiff commenced the instant action against Sedgwick seeking to challenge its denial of her claims for STD and LTD benefits. Both Sedgwick and the plaintiff now move for a summary judgment.

## III.   STANDARDS OF REVIEW

### A.   Standard of Review for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead,

it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

### B.     Standard of Review Under ERISA

The United States Supreme Court has generally held that the denial of a right to benefits under an ERISA plan is reviewed under a *de novo* standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed.2d 80 (1989); *see also Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). However, where the benefit plan expressly confers the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" on the plan administrator or fiduciary, the applicable standard of review is abuse of discretion. *Firestone*, 489 U.S. at 115, 109 S. Ct. 948; *Baker*, 364 F.3d at 629; *see also Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F. Supp.2d 724, 731 (S.D. Tex. 2005) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999)). The Plans at issue here vests Sedgwick, as the Claims Administrator, with discretionary authority to determine a participant's eligibility for benefits and thus, the standard of review applicable is the abuse of discretion standard. (*See* Dkt. No. 21, App. 3 at 3M00001482; App. 4 at 3M00001449.). The relevant provision contained in both the STD Plan and the LTD Plan confers authority as follows:

The Plan Administrator delegates its full and final discretionary power and authority with respect to benefit determinations to the Claims Administrator. This power and authority includes, without limitation:

- Determining all factual and legal questions;
- Interpreting any ambiguous or unclear terms in the Plan and the underlying documents,
- Determining the amount of benefits, if any, to which an individual is entitled to under the Plan;
- Prescribing forms to be used and procedures to be followed in applying for benefits and appealing any adverse benefit decision under the Plan; and
- Deciding all claims for benefits, adverse benefit determinations and appeals.

The Claims Administrator has discretionary authority to grant or deny benefits under the Plan. Benefits under the Plan shall only be paid if the Claims Administrator decides, in its discretion, that an individual is entitled to them. With respect to benefit determinations, all determinations, interpretations, rules and decisions of the Claims Administrator shall be final, conclusive and binding as to all parties. This delegation of authority shall not, however, apply to determinations pertaining to eligibility to participate in the Plan, which shall remain with the Plan Administrator. With respect to its delegated authority, the Claims Administrator is a named fiduciary under the Plan.

(Dkt. No. 21, App. 3 at 3M00001479; App. 4 at 3M00001446.).

A plan administrator or fiduciary's factual determinations under an ERISA plan are also reviewed pursuant to an abuse of discretion standard. *See Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *see also Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991) (reasoning "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard."). "Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397 - 98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "Substantial evidence is

'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* "A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)). A plan administrator or fiduciary's "decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain*, 279 F.3d at 342 (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999)).

Ordinarily, when resolving factual controversies, the court's review is confined "to the evidence before the plan administrator." *Vega*, 188 F.3d at 299 (internal citations omitted); *see also Wilbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992). It is not confined to the administrative record, however, when determining whether an administrator abused his discretion in interpreting the plan's terms and making a benefit determination. *Wilbur*, 974 F.2d at 639.

The Fifth Circuit usually employs a two-step analysis when determining whether an administrator has abused its discretion in construing the plan's terms. *James v. La. Laborers Health and Welfare Fund*, 29 F.3d 1029, 1032 - 33 (5th Cir. 1994). First, the court must determine whether the plan administrator's interpretation was the legally correct interpretation. *Id.* Second, if the plan administrator's interpretation was not the legally correct interpretation, then the court must consider whether the administrator's interpretation amounts to an abuse of discretion. *Id.* But, "if the administrator's interpretation and application of the Plan is legally correct, then [the] inquiry ends because obviously no abuse

of discretion has occurred." *Baker*, 364 F.3d at 629 – 30 (citing *Spacek v. Maritime Ass'n*, 134 F.3d 283, 292 (5th Cir. 1998)).

Further, when, as the plaintiff suggests, the role of the administrator presents a conflict of interest because it evaluates claims for benefits and pays benefits, the Court must consider this conflict as a factor in determining whether there has been an abuse of discretion. *Firestone*, 489 U.S. at 115, 109 S. Ct. 948 (citations omitted) (holding "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"). The United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, resolved any debate relative to its finding in *Firestone* by holding that the conflict of interest created by a plan administrator's dual role is "but one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. 105, 116 - 117, 128 S. Ct. 2343, 2351, 171 L. Ed.2d 299 (2008). That is to say, "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id* Nevertheless, such a conflict does not necessitate that a court "create special burden-of-proof rules, or other special procedural or evidentiary rules" focused on the party with the apparent conflict of interest when other rules or standards are applicable. *Id.*

IV.     **ANALYSIS AND DISCUSSION**

    A.     **The Contractual Limitations Periods Governing the Plaintiff's Claims for Benefits**

As a threshold matter, Sedgwick moves for a summary judgment on the plaintiff's claims to recover STD and LTD benefits, arguing that the plaintiff's claims for benefits fail

because they are time-barred by the applicable contractual limitations periods contained in the STD and LTD Plans. The plaintiff, in opposition, maintains that her lawsuit should be deemed timely because equitable tolling is warranted under the circumstances, given Sedgwick's procedural unreasonableness. (*See* Dkt. No. 24 at 2).

ERISA does not provide any specific statute of limitations for initiating a claim for judicial review, but "a participant and a plan may agree by contract to a particular limitations period . . . as long as the period is reasonable." *Encompass Office Sols., Inc. v. Louisiana Health Serv. & Indem. Co.*, 919 F.3d 266, 281 (5th Cir. 2019) (citing *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 - 06, 134 S. Ct. 604, 187 L. Ed.2d 529 (2013)). Such agreements "should be enforced unless the limitations period is unreasonably short or foreclosed by ERISA." *Heimeshoff*, 571 U.S. at 115, 134 S. Ct. at 616. Neither of those restraints is applicable here.

In this case, both the STD Plan and the LTD Plan impose a six-month limitations period from the time the administrative claims and appeal procedures are completed to file any action for benefits under the Plans. (*See* Dkt. No. 21, App. 3 at 3M00001470; App. 4 at 3M00001437.). Specifically, the applicable limitations provision contained in both the STD Plan and the LTD Plan provides as follows:

**Time Limitation for Commencing a Lawsuit**

You must commence any lawsuit for benefits under this Plan within (whichever is earlier):

- Two years after the date you exhausted your STD benefits or otherwise could have applied for LTD benefits; or
- Six months after the claims and appeal procedures are completed.

(*Id.*).

This Court finds the aforementioned contractual limitations period reasonable and, thus, enforceable. *See Dye v. Assocs. First Capital Long–Term Disability Plan,* No. 06–41569, 243 Fed. App'x 808, 809 - 10 (5th Cir. June 14, 2007) (finding a 120–day period was reasonable); *RedOak Hosp., LLC v. GAP Inc.*, No. CV H-16-1303, 2017 WL 2936316, at *3 (S.D. Tex. July 10, 2017) (finding 90-day period for claimant to file suit reasonable); *Rusch v. United Health Grp. Inc.*, No. 2:12-CV-00128, 2013 WL 3753947, at *4 (S.D. Tex. July 15, 2013) (finding a 180-day period for filing lawsuit reasonable).

It is undisputed that Sedgwick notified the plaintiff of its final denial of her appeal for STD benefits on June 22, 2016. It is also undisputed that Sedgwick notified the plaintiff of its final denial of her appeal for LTD benefits on October 11, 2017. Pursuant to the contractual limitations periods contained in both the STD Plan and the LTD Plan, the plaintiff had until December 22, 2016 and April 11, 2018, respectively, to commence a lawsuit challenging the denial of her claims for STD and LTD benefits under the respective Plans. Nevertheless, the plaintiff did not file the instant action until April 25, 2018, well after the six-month limitations period had expired. Having found no evidence of extraordinary circumstances in the record to warrant the application of equitable tolling or equitable estoppel with respect to the applicable contractual limitations periods as the plaintiff suggests, the plaintiff's claims are time-barred.

**B.** **Whether the Administrator Abused Its Discretion in Denying the Plaintiffs' Claims for Benefits**

Even assuming the plaintiff's lawsuit was filed within the applicable contractual limitations periods, the plaintiff has failed to demonstrate that Sedgwick abused its discretion

in denying her claims for benefits. "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Corry*, 499 F.3d at 402 (internal citations omitted). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Ellis*, 394 F.3d at 273 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). Stated another way, as long as an administrator's decision is not arbitrary and capricious and is supported by substantial evidence, it must remain undisturbed, even if the plaintiff's disability is supported by a preponderance of the evidence. *Id.*

Here, Sedgewick has established that its decision to deny the plaintiff's claim for benefits was based on substantial evidence. Sedgewick reasonably relied on the opinion of Dr. Evans, an independent consulting physician, who concluded that, based on the plaintiff's limited medical file, no objective evidence existed to support the plaintiff's alleged incapacity to perform the material duties of her regular and customary occupation at 3M. The plaintiff maintains that it was unreasonable for Sedgewick to rely on Dr. Evans' opinion, especially in light of Dr. Evans' obvious bias and the Attending Provider Statement provided by her *own* treating physician. This Court does not agree.

Indeed, it is undisputed that Dr. Evans evaluated all of the medical evidence submitted by the plaintiff and even contacted two of her own treating physicians to make further inquiry as to the scope of their assessment of the plaintiff's disability and, thereafter, provided a definitive opinion on the plaintiff's functional capabilities. Based on the

plaintiff's medical records and Dr. Evan's opinion, Sedgwick upheld its decision to deny the plaintiff's claim for STD benefits.

The Supreme Court has held that "[n]othing in the [ERISA] Act . . . suggests that plan administrators must accord special deference to the opinions of [a claimant's] treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S. Ct. 1965, 1970, 155 L. Ed.2d 1034 (2003). Moreover, the Fifth Circuit has held that an administrator does not abuse its discretion when it relies on the conflicting medical opinion of a consulting physician, even when the consulting physician never physically examined the claimant and has only reviewed a claimant's medical records. *See Gooden v. Provident Life*, 250 F.3d 329, 335 n. 9 (5th Cir. 2001); *Meditrust*, 168 F.3d at 213. Against this background, this Court cannot say that Sedgwick's decision to deny the plaintiff's claim for STD benefits was arbitrary or capricious. Nor can it say that Sedgwick's decision to deny the plaintiff's claim for LTD benefits was incorrect, as it remains undisputed that the plaintiff failed to exhaust her STD benefits.

V.    **CONCLUSION**

Based on the foregoing analysis and discussion, Sedgwick's motion for summary judgment is **GRANTED**; the plaintiff's cross-motion for summary judgment is **DENIED**.

It is so **ORDERED**.

SIGNED on this 30th day of September, 2019.

_____
Kenneth M. Hoyt
United States District Judge